**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Cindy M. Gil,                              )   No. CIV 07-0181-PHX-SMM
                                           )
                Plaintiff,                 )   **MEMORANDUM OF DECISION AND**
                                           )   **ORDER**
        v.                                 )
                                           )
JPMorgan Chase Bank, N.A.,                 )
                                           )
                Defendant.                 )
                                           )

        Before the Court is Defendant JPMorgan Chase Bank, N.A.'s ("JPMorgan Chase")[1] Motion for Summary Judgment (Dkt. 58).  Having considered the parties' memoranda and other submissions, the Court now issues this Memorandum of Decision and Order denying Defendant's motion.[2]

///
///
///

---

[1] Plaintiff has sued an entity by the name of "JPMorgan Chase N.A." (Dkt. 10, Am. Complaint), which Defendant asserts its true name is "JP Morgan Chase Bank N.A." (Dkt. 58, Def.'s Mot. for Summ. J. 1).  For purposes of this order, the Court refers to JPMorgan Chase Bank, N.A., which is the entity in the title of this action.

[2] Defendant requested oral argument in connection with its Motion for Summary Judgment (Id.).  The parties have had the opportunity to submit evidence and briefing.  Accordingly, the Court finds the pending motion for summary judgment suitable for decision without oral argument and Defendant's request is denied.  See LRCiv 7.2(f), 56.2.

**FACTUAL BACKGROUND**

Plaintiff Cindy Gil ("Plaintiff") began working in 1997 with Bank One, which later merged with JPMorgan Chase.[3] From 1999 until her termination on March 8, 2006, Plaintiff was a Home Loan Sales Originator ("Loan Originator") in the Home Equity lending department (DSOF ¶ 1). Plaintiff reported to Supervisor Kevin Fish, who in turn reported to Manager Laura Gregory (Id. ¶ 2). JPMorgan Chase trained Plaintiff on its computerized loan application system, but it allegedly did not train her for North Carolina (Id. ¶ 3; PSOF ¶ 3). Plaintiff had a low loan quality error rate (DSOF ¶ 3). JPMorgan Chase also trained Plaintiff on its Home Equity Employee Standards policy, which expressly prohibits falsification of loan applications (Id.). As a Loan Originator, Plaintiff answered telephone calls from prospective customers seeking home equity loans (Id. ¶ 4). When speaking with a potential new customer, Loan Originators must obtain the amount of loan desired and the value of the property (e.g., the "loan-to-value" ratio), which they input into JPMorgan Chase's computer system (Id. ¶ 5). The Loan Originator then obtains a computer-generated interest rate based on the customer's loan-to-value ratio (Id. ¶ 6).

As a Loan Originator, Plaintiff received a base salary and could earn bonus compensation (e.g., incentive pay or commissions) in accordance with JPMorgan Chase's Direct Lending Loan Center Sales Loan Originator Compensation Plan and Policy Statement (the "Incentive Pay Plan") (Id. ¶ 8). Under the Incentive Pay Plan, participants who fail to comply with the plan's policies and standards may be denied all or a portion of their

---

[3] There is some confusion over when Plaintiff began her employment with JPMorgan Chase. The parties have submitted different dates for when Plaintiff began her employment. Plaintiff alleges in her responsive statement of facts that she began working with Bank One on May 17, 1997 and that JPMorgan Chase hired her on March 7, 2006 when it merged with Bank One, but she also alleged in her Complaint that JPMorgan Chase hired her on February 17, 2006 (Dkt. 61, Pl.'s Statement of Facts ("PSOF") ¶ 9; Dkt. 10, ¶ 4). In its Answer, JPMorgan Chase submitted that it hired Plaintiff on February 7, 1997 (Dkt. 11, ¶ 4). The confusion appears to stem from the fact that Plaintiff began working with Bank One sometime in 1997, and Bank One later merged with JPMorgan Chase. Regardless, the parties agree that Plaintiff worked as a Home Loan Sales Originator from 1999 until her termination (Dkt. 59, Def.'s Statement of Facts ("DSOF") ¶ 1; PSOF ¶ 1).

1   compensation and be subject to termination (Id. ¶ 11).  Furthermore, the Incentive Pay Plan

2   terms do not guarantee payment of incentive pay to any participant (Id.).  As a result of the

3   work performed, generally when a Loan Originator loans more money, the Loan Originator

4   may receive more incentive pay (Id. ¶ 13).  When Loan Originators are terminated for cause,

5   JPMorgan Chase pays them only on loans that close on or before the Loan Originator's last

6   day of work   (Id. ¶ 14).  When Loan Originators are not terminated for cause but are

7   voluntarily terminated or transferred, JPMorgan Chase pays them on loans that close up to

8   30 days after termination (PSOF ¶ 11; Dkt. 59, Ex. 4, Incentive Pay Plan § I.2.1).

9          On the morning of February 16, 2006, Plaintiff spoke to a JPMorgan Chase customer

10  from North Carolina, Michael Mariaca (DSOF ¶ 15).  According to JPMorgan Chase, Mr.

11  Mariaca sought a $20,000 home equity loan and stated his property value as $130,000 (Id.

12  ¶ 15).  Plaintiff input Mr. Mariaca's stated property value of $130,000 into the computer

13  system, which generated an 11.6% interest rate based upon the loan-to-value ratio of

14  $20,000:$130,000 (Id. ¶ 16-17).  Plaintiff then changed Mr. Mariaca's property value from

15  $130,000 to $250,000, which generated a much lower interest rate of 8.95% (Id. ¶ 18).

16  JPMorgan Chase alleges that in order to change Mr. Mariaca's property value after she

17  entered it as $130,000, Plaintiff had to navigate her way through a multi-step, manual process

18  that could not have been done accidentally (Id. ¶ 20).  Mr. Mariaca committed to the loan

19  based upon the 8.95% interest rate, which made Plaintiff eligible to earn incentive pay on the

20  loan after it closed (Id. ¶ 21).  As part of the closing process, Mr. Mariaca's property was

21  appraised at approximately $130,000 and not $250,000 (Id. ¶ 23).

22         JP Morgan Chase reviewed a recording of the call, which led it to discover that Mr.

23  Mariaca had twice disclosed a value of $130,000 during the call (Id. ¶¶ 24-25).  On or about

24  March 1, 2006, Loan Closing Supervisor Nancy Anders emailed Plaintiff's supervisors, Mr.

25  Fish and Ms. Gregory, of the problem with Mr. Mariaca's application (Id. ¶ 25).  Ms. Anders

26  stated in her email that Mr. Mariaca clearly stated twice the value of his home as $130,000

27  and Plaintiff should have approved the loan at 11.6% (Id. ¶ 25).  After receiving Ms.

28  Anders's email, Ms. Gregory and Mr. Fish listened to the call and verified that Mr. Mariaca

1    had stated his value at $130.000 (<u>Id.</u> ¶ 27).  Ms. Gregory and Mr. Fish also examined the

2    record of the call created by JPMorgan Chase's Retail Credit Organization System ("RCO"),

3    which is a computerized loan origination platform for home equity lending (<u>Id.</u> ¶ 28).  Based

4    upon the call recording and the RCO records, Ms. Gregory and Mr. Fish concluded that

5    Plaintiff had deliberately falsified Mr. Mariaca's loan application (<u>Id.</u> ¶ 30).

6         On March 6, 2006, Ms. Gregory wrote Human Resources Business Partner Ambrose

7    Wilson an email stating that she had listened to the call, reviewed the RCO records, and

8    concluded that Plaintiff had increased Mr. Mariaca's property value for the interest rate quote

9    (<u>Id.</u> ¶ 33).  The same day, Ms. Gregory and Mr. Fish instructed Plaintiff to listen to a

10   recording of the call (<u>Id.</u> ¶ 34).  Then, Ms. Gregory discussed with Plaintiff her conclusion

11   that Plaintiff had falsified the value of the customer's property in order to obtain a lower

12   interest rate (<u>Id.</u> ¶ 35).

13        After discussing the matter with Human Resources, Ms. Gregory and Mr. Fish signed

14   a Recommendation for Termination form on March 7, 2006 (<u>Id.</u> ¶ 39).  The next day,

15   JPMorgan Chase terminated Plaintiff's employment (<u>Id.</u>).

16        On April 2, 2007, Plaintiff filed her Amended Complaint asserting two claims: (1) sex

17   discrimination and retaliation in violation of Title VII of the 1964 Civil Rights Act, 42 U.S.C.

18   § 2000e, *et seq.* and (2) violation of the Arizona Wage Act, A.R.S. § 23-350 *et seq.*

19                          **PROCEDURAL BACKGROUND**

20        Despite the Court's directive, both Plaintiff and JPMorgan Chase made objections

21   to evidence that were improper under LRCiv 7.2(m)(2).  Plaintiff made her objections to

22   JPMorgan Chase's evidence in her responsive memorandum and not, as required by the

23   rule, in her responsive statement of facts.  Even if Plaintiff properly made her objection to

24   testimony or evidence regarding the tape recorded conversation that JPMorgan destroyed,

25   the Court would not have ruled in her favor.  Plaintiff argued that JPMorgan Chase should

26   not be allowed to introduce testimony other than the tape itself because she alleged that

27   JPMorgan Chase wrongfully destroyed the tape.  However, during a telephonic discovery

28   dispute hearing held on May 6, 2008, the Court denied Plaintiff's request for the tape

1    recordings, but ordered JPMorgan Chase to disclose its policy regarding tape recordings

2    (Dkt. 52, Minute Entry Order).  JPMorgan Chase disclosed its standard business practice

3    to retain tape recordings for 180 days (PSOF ¶ 15; Dkt. 61, Ex. E. Decl. of Robert Smith

4    ¶ 4).  Although the tape would be the best evidence, Plaintiff has not shown JPMorgan

5    Chase destroyed the original tape in bad faith so that other evidence of the recording's

6    contents is inadmissible.  See Fed. R. Evid. 1004.

7         Likewise, JPMorgan Chase improperly objected to Plaintiff's evidence in a

8    separate filing, a motion to strike, instead of in its response to Plaintiff's separate

9    statement of facts.  Therefore, the Court struck JPMorgan Chase's motion as improper

10   (Dkt. 68, Order dated August 4, 2008).  JPMorgan Chase sought to exclude many items

11   of evidence that Plaintiff presented in her response and statement of facts arguing they

12   were inadmissible.  The party opposing summary judgment need not produce evidence

13   "in a form that would be admissible at trial in order to avoid summary judgment," but the

14   opposing party may use proper evidentiary materials listed in Rule 56(c).  Celotex Corp.

15   v. Catrett, 477 U.S. 317, 324 (1986).  The Court did not consider JPMorgan Chase's

16   numerous objections to Plaintiff's evidence because the Court struck its motion as

17   improper.

18                            **STANDARD OF REVIEW**

19        A court must grant summary judgment if the pleadings and supporting documents,

20   viewed in the light most favorable to the nonmoving party, "show that there is no genuine

21   issue as to any material fact and that the moving party is entitled to judgment as a matter

22   of law."  Fed. R. Civ. P. 56(c); see Celotex, 477 U.S. at 322-23; Jesinger v. Nev. Fed.

23   Credit Union, 24 F.3d 1127, 1130 (9th Cir. 1994).  Substantive law determines which

24   facts are material.  See Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); see also

25   Jesinger, 24 F.3d at 1130.  "Only disputes over facts that might affect the outcome of the

26   suit under the governing law will properly preclude the entry of summary judgment."

27   Anderson, 477 U.S. at 248.  The dispute must also be genuine, that is, the evidence must

28

1  be "such that a reasonable jury could return a verdict for the nonmoving party."  Id.; see

2  Jesinger, 24 F.3d at 1130.

3       A principal purpose of summary judgment is "to isolate and dispose of factually

4  unsupported claims."  Celotex, 477 U.S. at 323-24.  Summary judgment is appropriate

5  against a party who "fails to make a showing sufficient to establish the existence of an

6  element essential to that party's case, and on which that party will bear the burden of

7  proof at trial."  Id. at 322; see also Citadel Holding Corp. v. Roven, 26 F.3d 960, 964 (9th

8  Cir. 1994).  The moving party need not disprove matters on which the opponent has the

9  burden of proof at trial.  See Celotex, 477 U.S. at 323-24.  The party opposing summary

10 judgment need not produce evidence "in a form that would be admissible at trial in order

11 to avoid summary judgment." Id. at 324.  However, the nonmovant "may not rest upon

12 the mere allegations or denials of [the party's] pleadings, but . . . must set forth specific

13 facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e); see Matsushita

14 Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 585-88 (1986); Brinson v.

15 Linda Rose Joint Venture, 53 F.3d 1044, 1049 (9th Cir. 1995).

16                                   **DISCUSSION**

17       JPMorgan Chase seeks summary judgment on both of Plaintiff's claims, asserting

18 there are no genuine issues of disputed fact from which a jury could conclude that Chase

19 violated the Arizona Wage Act or discriminated and retaliated against Plaintiff in

20 violation of Title VII (Dkt. 58, 1:16-21).  Specifically, JPMorgan Chase asserts that it

21 paid Plaintiff all wages due an employee who was terminated for cause according to its

22 policies, and therefore, Plaintiff does not have a claim under A.R.S § 23-352 (Id. at 8:1-

23 22).  JPMorgan Chase also asserts that Plaintiff cannot establish the prima facie elements

24 for her claims of retaliation and sex discrimination under Title VII, and therefore, it is

25 entitled to summary judgment (See id. at 8:23-9:20, 9:21-13:11).

26 **I.     Sex Discrimination**

27       In her Amended Complaint, Plaintiff asserts a sex discrimination claim against

28 JPMorgan Chase for "terminating Plaintiff and treating her differently than male

1    employees in similar situations" (Dkt. 10, ¶ 13).  Title VII protects against discrimination

2    on the basis of an individual's race, color, religion, sex, or national origin.  42 U.S.C. §

3    2000e-2(a)(1).

4         **A.  Prima Facie Case**

5         To establish a prima facie case under Title VII, a plaintiff must offer proof that (1)

6    she is a member of a protected class; (2) she was qualified for her position; (3) she

7    experienced an adverse employment action; and (4) similarly situated individuals outside

8    her protected class were treated more favorably, or other circumstances surrounding the

9    adverse employment action give rise to an inference of discrimination.  See McDonnell

10   Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  If plaintiff establishes a prima facie

11   case, then defendant has the burden of producing a legitimate nondiscriminatory reason

12   for its employment decision.  See Wallis v. J.R. Simplot Co., 26 F.3d 885, 889 (9th Cir.

13   1994).  If defendant meets this burden, plaintiff must raise a genuine issue of material fact

14   that defendant's reason is a pretext for discrimination – i.e., the reason is false or the true

15   reason was a discriminatory one.  See id.

16        Here, Plaintiff established the first three elements of a prima facie disparate

17   treatment claim on the basis of sex.  Plaintiff submitted proof:  (1) that she is a woman, a

18   protected class under Title VII; (2) that she was qualified for her position (PSOF ¶¶ 63-

19   65); and (3) that she was terminated, an adverse employment action (Id. ¶ 39).  See

20   McDonnell Douglas, 411 U.S. at 802.

21        To establish that similarly-qualified employees were treated more favorably than

22   her, Plaintiff presented evidence that two male employees were only disciplined, if at all,

23   and not terminated in contrast to the investigation of her case and termination (PSOF ¶¶

24   55, 62).  JPMorgan Chase produced evidence that the two employees identified by

25   Plaintiff, Justin Tullock and Terry Reese, are not similarly situated to her (Dkt. 58, 11:21-

26   23).  JPMorgan Chase evinces that Mr. Tullock and Mr. Reese did not deliberately falsify

27   a customer's loan application as Plaintiff did (Id.).  Rather, Mr. Reese was very rude to a

28   customer and Mr. Tullock failed to verify income and listed rental property as a primary

1  residence in a loan application due to his inexperience, but neither of those actions rose to

2  the level of deliberate falsification of documents (Id. at 11:24-13:11; DSOF ¶¶ 47-57).

3  JPMorgan Chase further established that Mr. Tullock had much less training and

4  experience than Plaintiff (Dkt. 58 at 13:8; DSOF ¶ 53).  Plaintiff contends that Mr.

5  Tullock and Plaintiff were in the same training class for JPMorgan Chase (PSOF ¶ 53).

6  At the same time, Plaintiff admitted that she was a Loan Originator for about six years,

7  from at least 1999 (Id. ¶ 1).  Mr. Tullock, however, only worked as a Loan Originator for

8  about six months (Dkt. 59, Ex. 12, Tullock Dep. 5:9-15).  The Court finds that Plaintiff

9  has barely produced the requisite degree of proof necessary to establish a prima facie case

10  that other employees with similar qualifications were treated more favorably.  See

11  Chuang v. Univ. of Cal. Davis, Bd. of Trustees., 225 F.3d 1115, 1124 (9th Cir. 2000)

12  ("Under the McDonnell Douglas framework, '[t]he requisite degree of proof necessary to

13  establish a prima facie case for Title VII . . . on summary judgment is minimal and does

14  not even need to rise to the level of a preponderance of the evidence.'") (quotation

15  omitted).  As a result, Plaintiff is entitled to a presumption that JPMorgan Chase

16  terminated her because she is a woman.  See McDonnell Douglas, 411 U.S. at 802.  The

17  burden now shifts to JPMorgan Chase to produce evidence of a legitimate and

18  non-discriminatory reason for terminating Plaintiff.  Vasquez v. County of L.A., 349 F.3d

19  634, 640 (9th Cir. 2003).

20  **B.  Legitimate Non-discriminatory Reasons and Pretext**

21  JPMorgan Chase did not make any arguments regarding a legitimate

22  nondiscriminatory reason or pretext in its motion for summary judgment (See Dkt. 58,

23  9:21-13:11).  Rather, JPMorgan Chase raised these arguments for the first time in its reply

24  brief (See Dkt. 64, 2:23-3:1, 5:14-6:15).  Plaintiff was unable to respond to these new

25  arguments, and therefore, the Court declines to consider them.  See Lane v. Dept. of

26  Interior, 523 F.3d 1128, 1140 (9th Cir. 2008) (noting that it is in the district court's

27  discretion whether to consider an argument first raised in a reply brief).  In its motion for

28  summary judgment, JPMorgan Chase simply argued that Plaintiff could not establish a

1    prima facie case for discrimination (See Dkt. 58, 9:22-13:11).  As noted, the requisite

2    degree of proof necessary to establish a prima facie case for Title VII on summary

3    judgment is minimal.  See Chuang, 225 F.3d at 1124.  Because the Court has found that

4    Plaintiff established a prima facie case of discrimination, JPMorgan Chase's motion for

5    summary judgment is denied.  However, as the issues regarding a legitimate

6    nondiscriminatory reason and pretext should be addressed as a matter of law before

7    engaging in pretrial matters, the Court will allow the parties to file an additional motion

8    for summary judgment, if they so desire.

9    **II.    Retaliation**

10          Plaintiff alleges retaliation in violation of Title VII of the Civil Rights Act of 1964,

11   42 U.S.C. § 2000e et seq.  (Dkt. 10, First Am. Compl. ¶ 14).  To establish a prima facie

12   retaliation claim under Title VII, an employee must show that (1) she engaged in a

13   protected activity; (2) her employer subjected her to an adverse employment action; and

14   (3) a causal link exists between the protected activity and the adverse action.  Passantino

15   v. Johnson & Johnson Consumer Prods., Inc., 212 F.3d 493, 506 (9th Cir. 2000); Ray v.

16   Henderson, 217 F.3d 1234, 1240 (9th Cir. 2000); Little v. Windermere Relocation, Inc.,

17   301 F.3d 958, 969 (9th Cir. 2002).  If a plaintiff has shown a prima facie retaliation claim,

18   then the burden shifts to the defendant to furnish legitimate nondiscriminatory reasons for

19   the adverse employment action.  Ray, 217 F.3d at 1240.

20          If the defendant meets that burden, then the plaintiff bears the ultimate burden of

21   demonstrating that the reason was merely a pretext for a discriminatory motive.  Id.  The

22   plaintiff may show pretext "either directly by persuading the court that a discriminatory

23   reason more likely motivated the employer or indirectly by showing that the employer's

24   proffered explanation is unworthy of credence."  Villiarimo v. Aloha Island Air, Inc., 281

25   F.3d 1054, 1062 (9th Cir. 2002).  Circumstantial evidence relied on to show pretext must

26   be "both specific and substantial."  Id.

27

28

Only Plaintiff's March commissions that were *never* paid are at issue.[4]  The Court agrees with JPMorgan Chase that Plaintiff never alleged in her Complaint or EEOC charge that she was not *timely* paid certain commissions from February and March 1st - 8th, but only raised the allegations for the first time in her Response to JPMorgan Chase's Motion for Summary Judgment (Dkt. 60, 13:15-20; PSOF ¶ 43; Dkt. 64, Def.'s Reply 8:19-22).  In a response to a motion for summary judgment, a plaintiff may not raise new issues of violations beyond what it gave fair notice to in the complaint.  Pickern v. Pier 1 Imports (U.S.), Inc., 457 F.3d 963, 968 (9th Cir. 2006) ("Federal Rule of Civil Procedure 8(a)(2) requires that the allegations in the complaint 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'").  Plaintiff only alleged that JPMorgan Chase violated Title VII "by retaliating against Plaintiff Cindy M. Gil for her charge of discrimination, dated March 8, 2006, and *failing to pay* her March 2006 commissions" (Dkt. 10, Am. Compl. ¶ 14) (emphasis added).  Therefore, Plaintiff may not assert claims for the untimely payments of her February and March 1st - 8th commissions.[5]

**A.   Protected Activity**

As for JPMorgan's failure to pay her March 2006 commissions, Plaintiff has alleged that this action was in retaliation for her charge of discrimination dated March 8,

---

[4] Plaintiff has not alleged that she was terminated in retaliation for her Equal Employment Opportunity Commission ("EEOC") charge, as she filed the charge after she was terminated.

[5] Even if Plaintiff had properly alleged in her Amended Complaint that she received her February and March 1st - 8th commissions after a two-month delay, the two-month delay would not have been considered an adverse employment action.  Title VII only protects against retaliatory acts which are "materially adverse."  Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006).  "We speak of *material* adversity because we believe it is important to separate significant from trivial harms."  Id.  Plaintiff has not alleged that she suffered harm from a two-month delay in payments that she ultimately received.  Id. at 67 ("The anti-retaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm.").  Even if Plaintiff suffered harm, she has shown no evidence that the harm was material.  Furthermore, the Court cannot find that a two-month delay would deter others from engaging in a protected activity.  See id. at 68; Ray, 217 F.3d at 1243.

1   2006 (Id.).  On March 7, 2006, the day of Plaintiff's termination, Mr. Fish told Plaintiff

2   she would be paid her March commissions (Dkt. 61, Ex. A, Decl. of Cindy M. Gil ¶ 8).

3   At the same meeting, Plaintiff informed Ms. Gregory and Mr. Fish that she believed she

4   was being fired because of sex discrimination (Id. ¶ 5).  On March 8, 2006, Plaintiff filed

5   her charge of sex discrimination with the EEOC (Id. ¶ 6).  Thus, Plaintiff has established

6   the first element of a prima facie claim for disparate treatment - she engaged in a

7   protected activity.

8          **B.   Adverse Employment Action**

9          JPMorgan Chase argues that Plaintiff cannot present evidence on the second and

10  third elements:  that she experienced an adverse employment action or there is a causal

11  link between a protected activity and the employment decision (Dkt. 58, 9:7-10).  To

12  establish an adverse employment action, Plaintiff asserts that JPMorgan Chase subjected

13  her to adverse conditions after she filed her first EEOC charge by not paying her March

14  commissions (Dkt. 60, 13:15-17).  Actions that do not affect the "terms and conditions of

15  employment" may still be considered adverse employment actions, and the Ninth Circuit

16  recognizes "an action is cognizable as an adverse employment action if it is reasonably

17  likely to deter employees from engaging in protected activity."  Ray, 217 F.3d at 1243;

18  White, 548 U.S. at 68.  Although Plaintiff's allegations of retaliation occurred after she

19  was terminated, which is outside the condition of employment, Plaintiff has established

20  the second element of a prima facie claim that she suffered an adverse employment action

21  because the withholding of commissions is reasonably likely to deter others from

22  engaging in protected activity.  See Ray, 217 F.3d at 1243.

23         **C.   Causal Link**

24         To establish causation for the remaining March commissions, Plaintiff relies solely

25  on timing (Dkt. 60, 13:22).  Proximity of time between protected activity and an adverse

26  action may support an inference of causation.  Ray, 217 F.3d at 1244.  "Evidence based

27  on timing can be sufficient to let the issue go to the jury, even in the face of alternative

28  reasons proffered by the defendant."  Passantino, 212 F.3d at 507 (citation omitted).  "It is

1    [also] important to emphasize that it is *causation*, not temporal proximity itself, that is an

2    element of plaintiff's prima facie case, and temporal proximity merely provides an

3    evidentiary basis from which an inference can be drawn." <u>Porter v. Cal. Dept. of Corr.</u>,

4    419 F.3d 885, 895 (9th Cir. 2005) (emphasis added) (citing <u>Kachmar v. SunGard Data</u>

5    <u>Sys., Inc.</u>, 109 F.3d 173, 177 (3d Cir. 1997)).  Thus, the Court must look not only to

6    timing but to all of the circumstances to determine whether an inference of causation is

7    possible.  <u>See</u> <u>Coszalter v. City of Salem</u>, 320 F.3d 968, 978 (9th Cir. 2003).

8         JPMorgan Chase asserts it paid Plaintiff her full March 2006 commissions in

9    accordance with its policy (Dkt. 58, 9:11-12).  The Incentive Pay Plan states that

10   "Participants who fail to comply with the policies and standards identified herein may be

11   denied all or a portion of their Compensation and be subject to corrective action, up to

12   and including termination" (Dkt. 59, Ex. 4, Incentive Pay Plan § H.2).  Under the

13   Incentive Pay Plan's monthly commission terms, "[a] Participant who is **involuntarily**

14   **terminated for cause** will be paid incentives for loans that book up to and including the

15   last day the Participant actively worked, as long as the performance criteria outlined in

16   the terms and conditions have been met for the measurement period" (<u>Id.</u> at § I.2.4)

17   (emphasis in original).  Different terms apply for voluntary terminations or transfers,

18   involuntary terminations due to a reduction in force or job elimination, or leave of

19   absence or termination as a result of death (<u>See</u> <u>id.</u> at § I.2.1-3).  JPMorgan Chase

20   maintains that the decision to pay Plaintiff only for her March 1st - 8th commissions, and

21   not for loans that closed after March 8, 2006, was based upon the terms of its Incentive

22   Pay Plan (Dkt. 58, 9:13-16).

23        On the day of her termination, though, Plaintiff alleges that Mr. Fish told Plaintiff

24   she would be paid her March commissions (Dkt. 61, Ex. A, Decl. of Cindy M. Gil ¶ 8).

25   On the same day, Plaintiff informed Mr. Fish and Mr. Gregory that she believed she was

26   being fired because of sex discrimination, and on the next day, Plaintiff filed her charge

27   of sex discrimination with the EEOC (<u>Id.</u> at ¶¶ 5-6).  Plaintiff asserts that a causal

28

1    connection between the March 8, 2006 EEOC charge and JPMorgan Chase's decision not

2    to pay her remaining March commissions may be inferred from the temporal proximity.

3           Plaintiff has presented evidence based on timing to support an inference of

4    causation.  Ray, 217 F.3d at 1244.  At this time, JPMorgan Chase has not clearly

5    demonstrated an alternative reason or other circumstances that the Court must look to for

6    determining whether a causation inference is possible.  See Coszalter, 320 F.3d at 978.

7    Furthermore, in its motion, JPMorgan Chase did not clearly submit that Plaintiff was

8    denied the March commissions for a non-retaliatory motive, or in other words, a

9    legitimate nondiscriminatory reason.  Plaintiff has raised a genuine issue of material fact

10   as to whether a causal link exists between her protected activity and the adverse

11   employment action.  Therefore, Plaintiff's evidence based on timing is sufficient to

12   submit the issue to the jury.  See Passantino, 212 F.3d at 507.

13          **D.  Pretext**

14          Similar to its arguments regarding sex discrimination, JPMorgan Chase did not

15   make an argument regarding pretext for retaliation in its motion for summary judgment

16   (See Dkt. 58, 8:24-9:20).  Rather, JPMorgan Chase raised this argument for the first time

17   in its reply brief (See Dkt. 64, 10:17-11:8).  Therefore, the Court will not consider

18   JPMorgan Chase's pretext argument.  See Lane, 523 F.3d at 1140.  In its motion for

19   summary judgment, JPMorgan Chase mainly argued that Plaintiff could not establish a

20   prima facie case for retaliation (See Dkt. 58, 8:24-9:20).  Because Plaintiff has established

21   a prima facie case of retaliation, JPMorgan Chase's motion for summary judgment is

22   denied.  However, as the issues regarding a legitimate nondiscriminatory reason and

23   pretext should be addressed as a matter of law before engaging in pretrial matters, the

24   Court will allow the parties to file an additional motion for summary judgment, if they so

25   desire.

26   **III.    Arizona Wage Act**

27          In Count 2, Plaintiff seeks treble damages under the Arizona Wage Act, A.R.S. §

28   23-350 *et seq.*, for JPMorgan Chase's failure to pay her commissions earned in March

1   2006 (Dkt. 10, Am. Compl. ¶ 23).[6]  Under A.R.S. § 23-355, if an employer fails to pay

2   wages due any employee, "such employee may recover in a civil action against an

3   employer or former employer an amount which is treble the amount of the unpaid wages."

4   The statute defines "wages" as including "commissions," and the treble damages section

5   applies to bonus pay, such as monthly commissions.  A.R.S. § 23-350(5); see Velarde v.

6   PACE Membership Warehouse, Inc., 105 F.3d 1313, 1318 (9th Cir. 1997) (citing Schade

7   v. Diethrich, 158 Ariz. 1, 12, 760 P.2d 1050, 1061 (1988)).  However, if "a reasonable

8   good faith dispute as to the amount of wages due" exists, then an employer may withhold

9   wages.  Velarde, 105 F.3d at 1318 (citing A.R.S. § 23-352; Apache East, Inc. v. Wiegand,

10  119 Ariz. 308, 312, 580 P.2d 769, 773 (Ct. App. 1978)).  The Court has discretion over

11  whether to award treble damages under A.R.S. § 23-355, and "[t]he treble damages

12  penalty should not be awarded when there is a reasonable good faith wage dispute

13  between the employer and the employee."  Apache East, 119 Ariz. at 312, 580 P.2d at

14  773.  A.R.S. § 23-355 is not simply a penalty statute, though, because "the court could

15  find an employer had violated the statute but award only the plaintiff's actual damages -

16  the amount of unpaid wages."  Redhair v. Kinerk, Beal, Schmidt, Dyer & Sethi, P.C., 218

17  Ariz. 293, 300, 183 P.3d 544, 551 (Ct. App. 2008).

18          JPMorgan Chase maintains that it paid all of Plaintiff's commissions that she had

19  earned under JPMorgan Chase's policies because her termination was involuntary and for

20  cause (Dkt. 58, 8:15-16, 20-21).  Plaintiff contends that she did not perform any

21  inappropriate act (Dkt. 60, 12:20).  Even if Plaintiff was entitled to the commissions,

22  JPMorgan Chase has a reasonable good faith dispute as to the amount of wages because it

23  believes it paid all of Plaintiff's commissions.  Plaintiff has presented no evidence of or

24  raised a genuine issue of material fact over whether JPMorgan Chase's dispute is

25  unreasonable or not in good faith.

26  _____

27          [6] In her Complaint, Plaintiff only alleged JPMorgan Chase's failure to provide Plaintiff her
    commissions earned in March 2006 and made no mention of the delayed February or March 1st -
28  8th commissions (Dkt. 10, Am. Compl. ¶ 23).

1      A.R.S. § 23-355 is also a remedial statute, though, and the Court could find that

2   JPMorgan Chase violated the statute by not paying wages owed to Plaintiff and award her

3   actual damages, any unpaid March commissions she may be lawfully entitled to. See

4   Redhair, 218 Ariz. at 300, 183 P.3d at 551.  Plaintiff has presented evidence that Mr. Fish

5   told her she would be paid for her March commissions (PSOF ¶ 11).  Mr. Fish's statement

6   about the March commissions is ambiguous.  JPMorgan Chase maintains it paid her for

7   the March commissions she was entitled to from March 1st - 8th, but did not pay her for

8   the remainder of the month in accordance with its policy because she was terminated

9   involuntarily and for cause (DSOF ¶¶ 43-45).  JPMorgan Chase contends that Plaintiff

10  committed an intentional act that constituted loan fraud (Id. ¶¶ 30, 42).  Plaintiff disputes

11  that her act was intentional, and she presents a sworn affidavit that the computer formula

12  for North Carolina is confusing, she was tired, and she entered the amount Mr. Mariaca

13  told her into the computer system (Dkt. 61, Ex. 1, Decl. of Cindy M. Gil ¶ 3).  Therefore,

14  she alleges that she was involuntarily terminated without cause.  If Plaintiff was

15  terminated involuntarily and without cause, it is unclear if Plaintiff is entitled to any

16  commissions because JPMorgan Chase does not appear to have a policy regarding this

17  type of termination (See Dkt. 59, Ex. 4, Incentive Pay Plan § I.2.1-4).  At this stage,

18  Plaintiff has raised a dispute over a genuine issue of material fact that she is entitled to the

19  March commissions under JPMorgan Chase's Incentive Pay Plan.

20                                    **CONCLUSION**

21      Summary judgment is not proper as to Plaintiff's claims of sex discrimination and

22  retaliation under Title VII.  Plaintiff has demonstrated a prima facie case for both claims,

23  and JPMorgan Chase has not established a legitimate and nondiscriminatory reason for

24  terminating Plaintiff.  In addition, Plaintiff has raised a dispute over a genuine issue of

25  material fact for her Arizona Wage Act claim.

26  Accordingly,

27      **IT IS HEREBY ORDERED** that Defendant JPMorgan Chase's Motion for

28  Summary Judgment (Dkt. 58) is **DENIED**.

1    **IT IS FURTHER ORDERED** that the parties may file a motion for summary

2    judgment regarding the issues of legitimate nondiscriminatory reasons and pretext for

3    Plaintiff's sex discrimination and retaliation claims by February 23, 2009, if they so

4    desire.

5    DATED this 23rd day of January, 2009.

6

7

8                                                    Stephen M. McNamee
                                                     United States District Judge
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28