**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Cindy M. Gil,<br><br>        Plaintiff,<br><br>v.<br><br>JPMorgan Chase Bank, N.A.,<br><br>        Defendant. | No. CIV 07-0181-PHX-SMM<br><br>**MEMORANDUM OF DECISION AND ORDER** |

Before the Court is Defendant JPMorgan Chase Bank, N.A.'s ("JPMorgan Chase") Motion for Summary Judgment RE: Legitimate Non-discriminatory Reason and Pretext (Dkt. 76). JPMorgan Chase brought this motion pursuant to the Court's order permitting a motion for summary judgment regarding these issues (Dkt. 69). Also before the Court is Plaintiff's Motion to Exclude Evidence, which is contained in her response (Dkt. 87), and Motion to Strike (Dkt. 89). Having considered the parties' memoranda and other submissions, the Court now issues this Memorandum of Decision and Order granting Defendant's motion for summary judgment regarding Plaintiff's Title VII sex discrimination and retaliation claims.[1]

---

[1] Defendant requested oral argument in connection with its Motion for Summary Judgment (Dkt. 76). The parties have had the opportunity to submit evidence and briefing. Accordingly, the Court finds the pending motion for summary judgment suitable for decision without oral argument and Defendant's request is denied. See LRCiv 7.2(f), 56.2.

The Court will remand Plaintiff's remaining claim under the Arizona Wage Act to Maricopa County Superior Court.

**BACKGROUND**

Plaintiff Cindy Gil ("Plaintiff") began working in 1997 with Bank One, which later merged with JPMorgan Chase. From 1999 until her termination on March 8, 2006, Plaintiff was a Home Loan Sales Originator ("Loan Originator") in the Home Equity lending department (Dkt. 59, Def.'s Statement of Facts ("DSOF") ¶ 1). Plaintiff reported to Supervisor Kevin Fish, who in turn reported to Manager Laura Gregory (Id. ¶ 2). JPMorgan Chase trained Plaintiff on its computerized loan application system, but it allegedly did not really train her for North Carolina (Id. ¶ 3; Dkt. 88, Pl.'s Second Statement of Facts ("PSSOF") ¶ 12). Plaintiff had a low loan quality error rate (DSOF ¶ 3). JPMorgan Chase also trained Plaintiff on its Home Equity Employee Standards policy, which expressly prohibits falsification of loan applications (Id.). As a Loan Originator, Plaintiff answered telephone calls from prospective customers seeking home equity loans (Id. ¶ 4). When speaking with a potential new customer, Loan Originators must obtain the amount of loan desired and the value of the property (e.g., the "loan-to-value" ratio), which they input into JPMorgan Chase's computer system (Id. ¶ 5). The Loan Originator then obtains a computer-generated interest rate based on the customer's loan-to-value ratio (Id. ¶ 6).

As a Loan Originator, Plaintiff received a base salary and could earn bonus compensation (e.g., incentive pay or commissions) in accordance with JPMorgan Chase's Direct Lending Loan Center Sales Loan Originator Compensation Plan and Policy Statement (the "Incentive Pay Plan") (Id. ¶ 8). Under the Incentive Pay Plan, participants who fail to comply with the plan's policies and standards may be denied all or a portion of their compensation and be subject to termination (Id. ¶ 11). Furthermore, the Incentive Pay Plan terms do not guarantee payment of incentive pay to any participant (Id.). As a result of the work performed, generally when a Loan Originator loans more money, the Loan Originator may receive more incentive pay (Id. ¶ 13). When Loan Originators are terminated for cause, JPMorgan Chase pays them only on loans that close on or before the Loan Originator's last

day of work (Id. ¶ 14). When Loan Originators are not terminated for cause but are voluntarily terminated or transferred, JPMorgan Chase pays them on loans that close up to 30 days after termination (Dkt. 61, Pl.'s First Statement of Facts ("PFSOF") ¶ 11; Dkt. 59, Ex. 4, Incentive Pay Plan § I.2.1).

On the morning of February 16, 2006, Plaintiff spoke to a JPMorgan Chase customer from North Carolina, Michael Mariaca (DSOF ¶ 15). According to JPMorgan Chase, Mr. Mariaca sought a $20,000 home equity loan and stated his property value as $130,000 (Id. ¶ 15). Plaintiff input Mr. Mariaca's stated property value of $130,000 into the computer system, which generated an 11.6% interest rate based upon the loan-to-value ratio of $20,000:$130,000 (Id. ¶ 16-17). Plaintiff then changed Mr. Mariaca's property value from $130,000 to $250,000, which generated a much lower interest rate of 8.95% (Id. ¶ 18). JPMorgan Chase alleges that in order to change Mr. Mariaca's property value after she entered it as $130,000, Plaintiff had to navigate her way through a multi-step, manual process that could not have been done accidentally (Id. ¶ 20). Mr. Mariaca committed to the loan based upon the 8.95% interest rate, which made Plaintiff eligible to earn incentive pay on the loan after it closed (Id. ¶ 21). As part of the closing process, Mr. Mariaca's property was appraised at approximately $130,000 and not $250,000 (Id. ¶ 23).

JP Morgan Chase reviewed a recording of the call, which led it to discover that Mr. Mariaca had twice disclosed a value of $130,000 during the call (Id. ¶¶ 24-25). On or about March 1, 2006, Loan Closing Supervisor Nancy Anders emailed Plaintiff's supervisors, Mr. Fish and Ms. Gregory, of the problem with Mr. Mariaca's application (Id. ¶ 25). Ms. Anders stated in her email that Mr. Mariaca clearly stated twice the value of his home as $130,000 and Plaintiff should have approved the loan at 11.6% (Id. ¶ 25). After receiving Ms. Anders's email, Ms. Gregory and Mr. Fish listened to the call and verified that Mr. Mariaca had stated his value at $130.000 (Id. ¶ 27). Ms. Gregory and Mr. Fish also examined the record of the call created by JPMorgan Chase's Retail Credit Organization System ("RCO"), which is a computerized loan origination platform for home equity lending (Id. ¶ 28). Based

upon the call recording and the RCO records, Ms. Gregory and Mr. Fish concluded that Plaintiff had deliberately falsified Mr. Mariaca's loan application (Id. ¶ 30).

On March 6, 2006, Ms. Gregory wrote Human Resources Business Partner Ambrose Wilson an email stating that she had listened to the call, reviewed the RCO records, and concluded that Plaintiff had increased Mr. Mariaca's property value for the interest rate quote (Id. ¶ 33). The same day, Ms. Gregory and Mr. Fish instructed Plaintiff to listen to a recording of the call (Id. ¶ 34). Then, Ms. Gregory discussed with Plaintiff her conclusion that Plaintiff had falsified the value of the customer's property in order to obtain a lower interest rate (Id. ¶ 35).

After discussing the matter with Human Resources, Ms. Gregory and Mr. Fish signed a Recommendation for Termination form on March 7, 2006 (Id. ¶ 39). The next day, JPMorgan Chase terminated Plaintiff's employment (Id.).

On April 2, 2007, Plaintiff filed her Amended Complaint asserting two claims: (1) sex discrimination and retaliation in violation of Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e, *et seq.* and (2) violation of the Arizona Wage Act, A.R.S. § 23-350 *et seq.* After ruling on an earlier motion for summary judgment, the Court permitted Plaintiff to file a Second Amended Complaint in order to correct the name of Defendant (Dkt. 90).

**STANDARD OF REVIEW**

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the nonmoving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Jesinger v. Nev. Fed. Credit Union, 24 F.3d 1127, 1130 (9th Cir. 1994). Substantive law determines which facts are material. See Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); see also Jesinger, 24 F.3d at 1130. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. The dispute must also be genuine, that is, the

1  evidence must be "such that a reasonable jury could return a verdict for the nonmoving
2  party." Id.; see Jesinger, 24 F.3d at 1130.

3  A principal purpose of summary judgment is "to isolate and dispose of factually
4  unsupported claims." Celotex, 477 U.S. at 323-24. Summary judgment is appropriate
5  against a party who "fails to make a showing sufficient to establish the existence of an
6  element essential to that party's case, and on which that party will bear the burden of proof
7  at trial." Id. at 322; see also Citadel Holding Corp. v. Roven, 26 F.3d 960, 964 (9th Cir.
8  1994). The moving party need not disprove matters on which the opponent has the burden
9  of proof at trial. See Celotex, 477 U.S. at 323-24. The party opposing summary judgment
10 need not produce evidence "in a form that would be admissible at trial in order to avoid
11 summary judgment." Id. at 324. However, the nonmovant "may not rest upon the mere
12 allegations or denials of [the party's] pleadings, but . . . must set forth specific facts showing
13 that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see Matsushita Elec. Indus. Co.,
14 Ltd. v. Zenith Radio Corp., 475 U.S. 574, 585-88 (1986); Brinson v. Linda Rose Joint
15 Venture, 53 F.3d 1044, 1049 (9th Cir. 1995).

**DISCUSSION**

**I.    Motion to Strike**

Plaintiff continues to disregard the Court's rules and directives. Furthermore, Plaintiff repeatedly raises the same issues that the Court has already ruled upon.

Plaintiff previously made improper objections to evidence despite the Court's directive to comply with Local Rule 7.2(m)(2). The rule establishes that a party must object to evidence in its responsive statement of facts, and an objection may not be presented in a separate filing. LRCiv 7.2(m)(2). Plaintiff has again made improper objections by filing a separate motion to strike and objecting to evidence in her response, rather than her responsive statement of facts. Plaintiff has continually disregarded proper procedures, and the Court has already advised Plaintiff to comply with the rules (See Dkts. 68, 69, 72, and 75).

Furthermore, Plaintiff previously raised the issues that she raises again in her objections to evidence and motion to strike. Plaintiff again argues that JPMorgan Chase

- 5 -

should not be allowed to introduce testimony other than the tape itself because JPMorgan Chase allegedly wrongfully destroyed the tape. In ruling on the earlier motion for summary judgment, the Court found that although the tape would be the best evidence, Plaintiff has not shown JPMorgan Chase destroyed the original tape in bad faith so that other evidence of the recording's contents is inadmissible (Dkt. 69). Although the tape has not been produced, individuals can still testify to the effect that the tape had on their state of mind when deciding whether to terminate Plaintiff. Plaintiff simply repeats her earlier argument, and the Court has already determined this issue. To the extent that Plaintiff's objections and motion to strike request the Court to reconsider the issue, Plaintiff has not met the standard for reconsideration. Plaintiff's objections are overruled and her motion is denied.

**II.     Motion for Summary Judgment**

JPMorgan Chase seeks summary judgment on Plaintiff's claims, asserting there are no genuine issues of disputed fact from which a jury could conclude that it discriminated and retaliated against Plaintiff in violation of Title VII. Specifically, JPMorgan Chase asserts that the evidence shows it terminated Plaintiff for a legitimate non-discriminatory reason when her supervisors concluded she had deliberately falsified information on a loan application, and there is no evidence of pretext. Therefore, JPMorgan Chase is entitled to summary judgment on her claims of retaliation and sex discrimination under Title VII.

**I.     Sex Discrimination**

In her Amended Complaint, Plaintiff asserts a sex discrimination claim against JPMorgan Chase for "terminating Plaintiff and treating her differently than male employees in similar situations" (Dkt. 10, ¶ 13). Title VII protects against discrimination on the basis of an individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1).

**A.  Prima Facie Case**

To establish a prima facie case under Title VII, a plaintiff must offer proof that (1) she is a member of a protected class; (2) she was qualified for her position; (3) she experienced an adverse employment action; and (4) similarly situated individuals outside her protected class were treated more favorably, or other circumstances surrounding the adverse

employment action give rise to an inference of discrimination. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). If plaintiff establishes a prima facie case, then defendant has the burden of producing a legitimate non-discriminatory reason for its employment decision. See Wallis v. J.R. Simplot Co., 26 F.3d 885, 889 (9th Cir. 1994). If defendant meets this burden, plaintiff must raise a genuine issue of material fact that defendant's reason is a pretext for discrimination – i.e., the reason is false or the true reason was a discriminatory one. See id.

The Court previously found that Plaintiff produced the minimal requisite degree of proof necessary to establish a prima facie case of sex discrimination (Dkt. 69). The burden then shifted to JPMorgan Chase to produce evidence of a legitimate and non-discriminatory reason for terminating Plaintiff. Vasquez v. County of L.A., 349 F.3d 634, 640 (9th Cir. 2003).

### B. Legitimate and Non-discriminatory Reasons

By presenting evidence of Plaintiff's improper and potentially fraudulent conduct regarding a home loan, JPMorgan Chase has met its burden of showing that it terminated Plaintiff for legitimate and non-discriminatory reasons (See DSOF ¶ 42). After Mr. Mariaca's property was appraised at $130,000 and not $250,000, JPMorgan Chase employees reviewed a recording of the call and discovered that Mr. Mariaca had twice disclosed the value of $130,000 (Id. ¶ 24). Ms. Anders informed Ms. Gregory and Mr. Fish of this discovery by email (Id. ¶ 25). Ms. Gregory and Mr. Fish listened to the call and also examined the RCO records (Id. ¶ 27-28). Ms. Gregory and Mr. Fish had Plaintiff listen to a recording of the call, and Ms. Gregory "discussed with Plaintiff her conclusion that Plaintiff had falsified the value of the customer's property in order to obtain a lower interest rate" (Id. ¶¶ 34-35; PFSOF ¶¶ 34-35). After their investigation, Ms. Gregory and Mr. Fish recommended Plaintiff's termination (DSOF ¶ 39).

Based on the evidence obtained during JPMorgan Chase's investigation of Plaintiff, Ms. Gregory concluded that Plaintiff had deliberately falsified information on a loan application (Id. ¶ 42). Ms. Gregory declared, "[m]y decision to terminate [Plaintiff's]

employment was based solely upon my conclusion that she had deliberately falsified information on a loan application and nothing to do with [Plaintiff's] sex, female" (Dkt. 59, Ex. 2, Decl. of Laura Gregory ¶ 40). Similarly, Mr. Fish concluded that Plaintiff's conduct was inappropriate and had legitimate concerns about potential loan fraud, and therefore he recommended Plaintiff's termination (DSOF ¶ 39). In fact, there was a consensus between Human Resources, Ms. Gregory, and Mr. Fish that Plaintiff should be terminated (Id.). By producing evidence that it was concerned about Plaintiff's workplace misconduct based on its investigation, JPMorgan Chase has met its burden of demonstrating a legitimate and non-discriminatory reason for terminating Plaintiff's employment.

### C. Pretext

Plaintiff is now required to produce evidence sufficient to create a genuine issue of fact as to whether JPMorgan Chase's legitimate and non-discriminatory reason was a mere pretext for discrimination. Plaintiff "can show pretext directly, by showing that discrimination more likely motivated the employer, or indirectly, by showing that the employer's explanation is unworthy of credence" because it is inconsistent or otherwise not believable. Vasquez, 349 F.3d at 641; Dominguez-Curry v. Nev. Transp. Dept., 424 F.3d 1027, 1037 (9th Cir. 2005). "To show pretext using circumstantial evidence, a plaintiff must put forward specific and substantial evidence challenging the credibility of the employer's motives." Vasquez, 349 F.3d at 642; Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1222 (9th Cir. 1998) ("[Circumstantial] evidence of 'pretense' must be 'specific' and 'substantial' in order to create a triable issue with respect to whether the employer intended to discriminate on the basis of sex.").

Plaintiff has not advanced any arguments to establish pretext. In fact, the word "pretext" does not even appear in Plaintiff's response. The Court permitted an additional motion for summary judgment specifically to address the issues of legitimate non-discriminatory reasons and pretext for Plaintiff's sex discrimination and retaliation claims (Dkt. 69). Plaintiff is mistaken that Defendant's second motion for summary judgment is "no different" than Defendant's first motion for summary judgment and should be denied for this

reason (Dkt. 87, 1:17-19). The Court denied JPMorgan Chase's first motion for summary judgment because Plaintiff was unable to respond to JPMorgan Chase's arguments regarding a legitimate non-discriminatory reason and pretext. Defendant raised these arguments for the first time in its reply, and therefore, the Court declined to consider them without first giving Plaintiff an opportunity to respond. Despite the Court affording Plaintiff an opportunity to respond to the issue of pretext, Plaintiff has failed to produce evidence sufficient to create a genuine issue of fact as to whether JPMorgan Chase's legitimate and non-discriminatory reason was a mere pretext for discrimination.

Plaintiff has not advanced any direct or indirect evidence showing that Ms. Gregory's, Mr. Fish's, or JPMorgan Chase's motives were discriminatory. Plaintiff does not argue that Ms. Gregory or Mr. Fish were biased against Plaintiff based on her gender. Plaintiff focuses much of her response on Mr. Tullock and Mr. Reese, who she argues are similarly situated male employees who were treated more favorably than her, which is the fourth element for establishing a prima facie case under Title VII. As the same evidence that makes out a prima facie case may be relied upon to establish pretext, the Court will treat Plaintiff's argument as her position regarding pretext. See Miller v. Fairchild Indus., Inc., 797 F.2d 727, 732 (9th Cir. 1986). At most, though, Plaintiff's discussion of Mr. Tullock and Mr. Reese allows the Court to infer that JPMorgan Chase conducted its investigation of her in a different manner from other investigations. Even when viewed in the light most favorable to Plaintiff, for the reasons discussed below, this argument does not create a genuine issue of material fact as to whether JPMorgan Chase terminated Plaintiff because she is a woman.

**1. Ms. Gregory's or Mr. Fish's Intent Does Not Demonstrate Pretext**

Plaintiff has offered no direct evidence of discriminatory intent. "Direct evidence is evidence which, if believed, proves the fact [of discriminatory animus] without inference or presumption." Godwin, 150 F.3d at 1221 (internal quotation marks omitted) (alteration in original). Where an individual who exhibits bias has significant influence or leverage over the formal decision maker, such evidence is sufficient evidence of discrimination to defeat summary judgment. Dominguez-Curry, 424 F.3d at 1040 n.5.

Plaintiff has not alleged that anyone made any sexually discriminatory statements about her or displayed a discriminatory attitude toward her. In fact, Plaintiff submitted evidence of excellent performance reviews by Mr. Fish, her direct supervisor (Dkt. 61, Ex. H-3; Dkt. 88, Ex. B). At the end of 2005, which was just months before her March 2006 termination, Mr. Fish reported:

> Cindy received her Lending Authority in November and has been held to full goals and standards since that time. She has exceeded volume goals and has passed her quality audits both months averaging over $4.5 million in volume with a cumulative error rate less than 2%. She was December's top producer for our team with over $4.6 million in volume. Cindy has great conversions from Call to Application, Application to Vendor and Vendor to Book. She excels in each of the fundamentals of the job itself, but could benefit from more focus on the additional criteria such as One Protect and Service Observes. Cindy also has a strong grasp of product knowledge and is self motivated towards her individual improvements.

Id. In previous years, Plaintiff received performance ratings of "exceptional achievement" in 2000 and 2001, "exceeds expectations" in 2002, and "meets expectations" in 2003 and 2004 (PSSOF ¶ 2). Up until the time of the alleged fraud, Plaintiff has not shown that her supervisor made any discriminatory, or even negative, comments about her. In fact, the performance review shows that her supervisor valued her work. Plaintiff has not produced any evidence that Mr. Fish or JPMorgan Chase discriminated against her before her termination.

Moreover, while Ms. Gregory and Mr. Fish may have had significant influence or leverage over the formal decision to terminate Plaintiff because they recommended Plaintiff's termination, Plaintiff has not shown that they exhibited any bias toward her. See Dominguez-Curry, 424 F.3d at 1040 n.5. First, Plaintiff has not shown that Ms. Gregory or Mr. Fish made the ultimate termination decision because Plaintiff only alleges that they recommended termination. Even if they had significant influence over the formal decision, Plaintiff has offered no evidence that their decision was motivated by gender bias. In his deposition, Mr. Fish testified that his termination recommendation was "based on the information [he] had" (Dkt. 59, Ex. 8, 14: 4-7). Moreover, "[a]s a personal preference of having her as a producer on [his] team, [he] would have liked to have kept [Plaintiff]" (Id.).

Furthermore, Plaintiff has offered no evidence of discriminatory remarks made by any other person who assisted in the investigation or who ultimately decided upon Plaintiff's termination. In addition to failing to present evidence that Ms. Gregory and Mr. Fish had any bias toward her, Plaintiff produces no direct evidence that the person ultimately responsible for termination decisions was motivated by discriminatory intent.

### 2. The Manner of Investigation Does Not Demonstrate Pretext

Although Plaintiff does not expressly argue such, the Court construes Plaintiff's focus on Mr. Tullock and Mr. Reese as an argument that the manner in which JPMorgan investigated her demonstrates pretext because similarly situated males were disciplined lightly or not at all while she was terminated. Plaintiff presents evidence that she knew of JPMorgan Chase's progressive policy for non-intentional acts (PSSOF ¶ 5). Employees receive a coaching and counseling session, and sometimes they receive an action plan (Id.). If the non-intentional act occurs again, then the employee receives a written warning (Id.). JPMorgan Chase never disciplined or warned Plaintiff before her termination (Id. ¶ 6). On the other hand, Plaintiff concedes that "[a]n employee would only be terminated without a warning if he/she performed an intentional act, such as theft, came to work intoxicated, or engaged in fighting" (Id. ¶ 5). Plaintiff's assertions of circumstantial evidence do not create a genuine issue of material fact as to pretext.

JPMorgan Chase has established that it terminated Plaintiff for alleged fraud, an *intentional* act. Plaintiff has not argued that the reason for JPMorgan Chase's termination was discriminatory. Instead, Plaintiff denies falsifying customer-stated information, and she argues that JPMorgan Chase's determination about the alleged fraud was wrong (Dkt. 60, 9:24; Dkt. 87, 5:18-19). Plaintiff maintains that she did not intend to commit fraud because she had not performed loan applications for properties in North Carolina before Bank One merged with JPMorgan Chase, she found the North Carolina formula confusing, and she was tired that day (PFSOF ¶ 31; Dkt. 88, Ex. A, Decl. of Cindy M. Gil ¶ 7). The Court must view the allegations in the light most favorable to Plaintiff, and therefore, the Court will assume Plaintiff's explanations are true. However, even if JPMorgan Chase incorrectly determined

that Plaintiff committed fraud, Plaintiff has not shown that this determination was discriminatory. While JPMorgan Chase's reason for terminating Plaintiff could have been wrong or unfounded, it was not discriminatory.

Plaintiff also relies on the differences in JPMorgan Chase's discipline between her and two males, Mr. Tullock and Mr. Reese. Showing that JPMorgan Chase treated similarly situated employees outside Plaintiff's protected class more favorably would be probative of pretext. See Vasquez, 349 F.3d at 641. However, individuals are only similarly situated when they have similar jobs and display similar conduct. Id. In the present case, Plaintiff has failed to present any evidence that either of the two males were accused of similar misconduct or misconduct of comparable seriousness. See id. (plaintiff failed to produce sufficient evidence of pretext where the individuals to which he compared himself were not similarly situated because they did not hold similar jobs and were not involved in same type of offense). Although there is evidence that JPMorgan Chase followed different procedures in the investigations of two males, Plaintiff has conceded that JPMorgan Chase follows a different procedure when it believes an employee committed an *intentional* act. JPMorgan Chase contends that it found Plaintiff's actions intentional while Mr. Tullock's and Mr. Reese's actions were due to inexperience or very bad customer service, respectively (Dkt. 58, 11:11-13:11). Furthermore, Plaintiff has not shown any evidence that Mr. Tullock's supervisors believed he had made deliberate misrepresentations (Id. at 13:2-4).

In addition, Plaintiff has not shown that Ms. Gregory and Mr. Fish, the persons who recommended Plaintiff's termination, conducted both investigations of the two male employees. JPMorgan Chase maintains that Mr. Reese was not within Ms. Gregory's chain of command, and Ms. Gregory did not make decisions regarding his employment (Dkt. 59, Ex. 2, Decl. of Laura Gregory ¶ 38; Dkt. 64, Ex. 1, Gregory Dep. 100:12-16). Plaintiff has not shown otherwise. This is significant because the individual in charge of an investigation has tremendous influence over how the investigation is conducted. See Hollins v. Atlantic Co., Inc., 188 F.3d 652, 659 (6th Cir. 1999) (holding that, to be similarly situated, an employee must have the same supervisor, be subject to the same standards, and have engaged

in the same conduct), cited with approval in, Vasquez, 349 F.3d at 642 n.17; Wheeler v. Aventis Pharms., 360 F.3d 853, 859 (8th Cir. 2004) (finding that technique employed during an investigation is a matter of business judgment).

The most significant flaw in Plaintiff's attempt to rely on JPMorgan Chase's investigatory techniques as evidence of pretext is that Plaintiff has offered no evidence that JPMorgan's reason for terminating her was not its true motive or that its explanation for her termination is unworthy of credence. See Bodett v. CoxCom, Inc., 366 F.3d 736, 743 (9th Cir. 2004) (plaintiff may prove pretext either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence). Plaintiff has admitted that she entered incorrect information into the computer on a customer's loan application in violation of JPMorgan Chase's Home Equity Employee Standards policy (DSOF ¶¶ 39-41). Although Plaintiff contends that she should not have been terminated for cause, she testified three times in her deposition, "I made an honest mistake" (Dkt. 59, Ex. 2, 5:23, 88:4-16). While Plaintiff argues that her actions were unintentional, she does not argue that JPMorgan Chase's belief that she acted intentionally was not based on good faith or had discriminatory intent behind it. Essentially, Plaintiff contends the investigation of her was pretext simply because the decision to terminate her was erroneous. The issue before this Court, however, is not whether JPMorgan Chase's conclusions were correct; instead, the issue is whether JPMorgan Chase conducted a thorough investigation and whether they made credibility determinations reasonably and in good faith. See Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1063 (9th Cir. 2002) (material fact is not whether employee actually committed misconduct, but rather, whether employer "honestly believed its reason for its actions, even if its reason is . . . baseless") (citation omitted). In the present case, the evidence shows that JPMorgan Chase conducted a thorough investigation and made reasonable, good faith credibility determinations (See DSOF ¶¶ 23-41). Differences in the type of discipline in the instant case and other investigations are not evidence that JPMorgan Chase was motivated by discriminatory intent, or that JPMorgan Chase's explanation is not believable for some other

reason. See Vasquez, 349 F.3d at 642. Nothing in the record contradicts the fact that JPMorgan Chase honestly and reasonably believed that Plaintiff's conduct was inappropriate and potentially fraudulent (DSOF ¶ 30). See Villiarimo, 281 F.3d at 1063. Thus, even assuming that JPMorgan Chase could have performed a better investigation or its conclusion was incorrect, Plaintiff has not produced any evidence that JPMorgan's legitimate non-discriminatory reasons for terminating her were a pretext.

Plaintiff has not offered any direct evidence that JPMorgan Chase was motivated by discriminatory intent. Nor has she shown that JPMorgan Chase's explanation is not believable for some other reason. To show pretext using circumstantial evidence, Plaintiff was required to put forward specific and substantial evidence challenging the credibility of JPMorgan Chase's motives. She has failed to do so.

## II. Retaliation

Plaintiff alleges retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (Dkt. 10, First Am. Compl. ¶ 14). To establish a prima facie retaliation claim under Title VII, an employee must show that (1) she engaged in a protected activity; (2) her employer subjected her to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action. Passantino v. Johnson & Johnson Consumer Prods., Inc., 212 F.3d 493, 506 (9th Cir. 2000); Ray v. Henderson, 217 F.3d 1234, 1240 (9th Cir. 2000); Little v. Windermere Relocation, Inc., 301 F.3d 958, 969 (9th Cir. 2002). If a plaintiff has shown a prima facie retaliation claim, then the burden shifts to the defendant to furnish legitimate non-discriminatory reasons for the adverse employment action. Ray, 217 F.3d at 1240.

If the defendant meets that burden, then the plaintiff bears the ultimate burden of demonstrating that the reason was merely a pretext for a discriminatory motive. Id. The plaintiff may show pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Villiarimo, 281 F.3d at 1062.

Circumstantial evidence relied on to show pretext must be "both specific and substantial." Id.

Previously, the Court ruled that only Plaintiff's unpaid March commissions are at issue. Additionally, the Court held that Plaintiff engaged in a protected activity by filing her charge of sex discrimination with the EEOC on March 8, 2006 and suffered an adverse employment action by not receiving the March commissions. After this ruling, Plaintiff sought leave to amend her complaint for the third time in order to add the allegation that JPMorgan Chase delayed payment of her February and March 1-8, 2006 commissions (Dkt. 85). The Court denied Plaintiff's motion to amend the complaint (Dkt. 98).

**A. Causal Link**

To establish causation for the unpaid March commissions, Plaintiff relied solely on timing (Dkt. 60, 13:22). On March 7, 2006, the day of her termination, Plaintiff alleges that Mr. Fish told Plaintiff she would be paid her March commissions (Dkt. 88, Ex. A, Decl. of Cindy M. Gil ¶ 13). On the same day, Plaintiff informed Mr. Fish and Mr. Gregory that she believed she was being fired because of sex discrimination, and on the next day, Plaintiff filed her charge of sex discrimination with the EEOC (Id. at ¶¶ 8-9). Plaintiff asserts that a causal connection between the March 8, 2006 EEOC charge and JPMorgan Chase's decision not to pay her March commission may be inferred from the temporal proximity. While this assertion is accurate, see Miller, 797 F.2d at 731, it is also problematic.

Proximity of time between protected activity and an adverse action may support an inference of causation. Ray, 217 F.3d at 1244. "It is [also] important to emphasize that it is *causation*, not temporal proximity itself, that is an element of plaintiff's prima facie case, and temporal proximity merely provides an evidentiary basis from which an inference can be drawn." Porter v. Cal. Dept. of Corr., 419 F.3d 885, 895 (9th Cir. 2005) (emphasis added) (citing Kachmar v. SunGard Data Sys., Inc., 109 F.3d 173, 177 (3d Cir. 1997)). Thus, the Court must look not only to timing but to all of the circumstances to determine whether an inference of causation is possible. See Coszalter v. City of Salem, 320 F.3d 968, 978 (9th Cir. 2003).

At the time of the first motion for summary judgment, JPMorgan Chase had not clearly demonstrated an alternative reason or other circumstances that the Court must look to for determining whether a causation inference is possible (Dkt. 69, 13:4-6). JPMorgan Chase also did not clearly submit a legitimate non-discriminatory reason for denying the March commissions in its motion so that Plaintiff could respond to it.

JPMorgan Chase asserts it paid Plaintiff her full March 2006 commissions in accordance with its policy (Dkt. 76, 8:24-9:17). Plaintiff has not responded to this argument. The Incentive Pay Plan states that "Participants who fail to comply with the policies and standards identified herein may be denied all or a portion of their Compensation and be subject to corrective action, up to and including termination" (Dkt. 59, Ex. 4, Incentive Pay Plan § H.2). Under the Incentive Pay Plan's monthly commission terms, "[a] Participant who is **involuntarily terminated for cause** will be paid incentives for loans that book up to and including the last day the Participant actively worked, as long as the performance criteria outlined in the terms and conditions have been met for the measurement period" (Id. at § I.2.4) (emphasis in original). Different terms apply for voluntary terminations or transfers, involuntary terminations due to a reduction in force or job elimination, or leave of absence or termination as a result of death (See id. at § I.2.1-3). JPMorgan Chase maintains it paid Plaintiff all her wages due because she was terminated for cause (Dkt. 76, 9:8-17). Furthermore, it maintains that the decision to pay Plaintiff only for her March 1st - 8th commissions, and not for loans that closed after March 8, 2006, was based upon the terms of its Incentive Pay Plan and not retaliation for Plaintiff's EEOC charge (Id.). JPMorgan Chase further asserts there is no evidence to the contrary (Id.). Indeed, Plaintiff has failed to produce evidence that she was ever the subject of gender animus.

The Court finds that Plaintiff has not established a causal link as a matter of law, because she presents no evidence – other than the proximity in time between the protected activity and the adverse action – to support an inference of causation. Under the circumstances of this case, the proximity in time between Plaintiff's EEOC charge and the adverse employment action indicates very little about causation because – before she

1 engaged in the protected activity – Plaintiff had already been informed of the loan fraud
2 accusations against her and been terminated (PSSOF ¶¶ 12-14). Thus, rather than raising an
3 inference of retaliation or causation, the proximity in timing here was legitimately dictated
4 by external forces. See Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 272-74 (2001)
5 ("Employers need not suspend previously planned transfers upon discovering that a Title VII
6 suit has been filed, and their proceeding along lines previously contemplated, though not yet
7 definitively determined, is no evidence whatever of causality.").

8 The causal inference that may be drawn from the temporal proximity fails to persuade
9 the Court that a discriminatory reason more likely motivated JPMorgan Chase, or that
10 JPMorgan Chase's proffered explanation is unworthy of credence. Villiarimo, 281 F.3d at
11 1062. The Court should not look only at the length of time, without regard to factual
12 circumstances, when ruling on a motion for summary judgment. Coszalter, 320 F.3d at 978
13 ("In some cases, the totality of the facts may form such a clear picture that a district court
14 would be justified in granting summary judgment, either for or against a plaintiff, on the
15 issue of retaliatory motive . . ."). Plaintiff has failed to demonstrate that a discriminatory
16 reason more likely motivated JPMorgan Chase, or that the JPMorgan Chase's proffered
17 explanation is unworthy of credence. Villiarimo, 281 F.3d at 1062. The totality of the facts
18 "form such a clear picture" to justify granting summary judgment in favor of JPMorgan
19 Chase on the issue of retaliatory motives. Coszalter, 320 F.3d at 978.

**B. Pretext**

21 Even assuming, arguendo, that Plaintiff has established a prima facie case of
22 retaliation, summary judgment will be granted for JPMorgan Chase because it has presented
23 evidence of legitimate and non-discriminatory reasons for not paying the commissions.
24 JPMorgan Chase paid Plaintiff her commissions in accordance with its Home Equity
25 Employee Standards policies regarding termination for cause. Furthermore, JPMorgan Chase
26 terminated Plaintiff for cause for committing loan fraud, and Plaintiff has failed to
27 demonstrate that reason was pretextual. Supra at 8-14. Accordingly, even if Plaintiff could
28 establish a prima facie case based on temporal proximity, she has not produced evidence

sufficient to create a genuine issue of material fact that JPMorgan Chase's nonpayment of her commissions in accordance with its policy was mere pretext for retaliation.

"When a motion for summary judgment is made, the adverse party may not rest upon mere allegations [or] denials of pleadings, but [its] response must set forth specific facts showing that there is a genuine issue for trial." Brinson, 53 F.3d at 1049; see Celotex, 477 U.S. at 324 ("Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"). This principle is especially important here because the parties filed the motions for summary judgment after substantial discovery, and discovery has closed. JPMorgan Chase has shown that "there is an absence of evidence to support [Plaintiff's] case." See Celotex, 477 U.S. at 325. Furthermore, although Plaintiff made a prima facie showing on her disparate treatment claim and, possibly, her retaliation claim, she failed to produce any evidence to create a genuine issue of material fact that JPMorgan's legitimate reasons for terminating her were pretextual. See id. at 323. Therefore, the Court will grant summary judgment in JPMorgan Chase's favor on Count One.

### III. Arizona Wage Act

In Count 2, Plaintiff seeks treble damages under the Arizona Wage Act, A.R.S. § 23-350 *et seq.*, for JPMorgan Chase's failure to pay her commissions earned in March 2006 (Dkt. 10, Am. Compl. ¶ 23).[2] The Court previously held that Plaintiff raised a dispute over a genuine issue of material fact that she is entitled to the March commissions under JPMorgan Chase's Incentive Pay Plan.

However, Plaintiff has alleged her March 8th - 31st commissions total $4,261.41 (PFSOF ¶ 61). Even if this amount is trebled, it results in a maximum of $12,784.23 that she is entitled to under the Arizona statute, which is below the minimum amount in controversy

---

[2] In her Complaint, Plaintiff only alleged JPMorgan Chase's failure to provide Plaintiff her commissions earned in March 2006 and made no mention of the delayed February or March 1st - 8th commissions (Dkt. 10, Am. Compl. ¶ 23).

required for diversity jurisdiction. Furthermore, as summary judgment has been granted in JPMorgan Chase's favor on the federal Title VII claims, the Court declines to exercise jurisdiction over Plaintiff's Arizona Wage Act claim and will remand it to Maricopa County Superior Court.

## CONCLUSION

Summary judgment is proper as to Plaintiff's claims of sex discrimination and retaliation under Title VII. Both of Plaintiff's claims fail as a matter of law because Plaintiff has not shown that JPMorgan Chase's legitimate, non-discriminatory reasons for terminating her were pretext. On the other hand, Plaintiff has raised a dispute over a genuine issue of material fact for her Arizona Wage Act claim, but the Court declines to exercise jurisdiction over it.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Strike (Dkt. 89) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant JPMorgan Chase's Motion for Summary Judgment RE: Legitimate Non-discriminatory Reason and Pretext (Dkt. 76) is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment in JPMorgan Chase's favor on Plaintiff's claims of sex discrimination and retaliation in violation of Title VII under Count One of Plaintiff's Second Amended Complaint (Dkt. 91).

**IT IS FURTHER ORDERED** that Plaintiff's remaining claim under the Arizona Wage Act, A.R.S. § 23-355, is **REMANDED** to the Superior Court of the State of Arizona in and for the County of Maricopa for all further proceedings.

DATED this 9th day of June, 2009.

_____
Stephen M. McNamee
United States District Judge